1807.

Hammond
vs
Norris

DECEMBER.      HAMMOND, *et al.* Lessee, *vs.* NORRIS.

*A deed located on the plots, and not counterlocated by the opposite party may be read by the party locating it, to show how it is located, but when its validity comes in question if it is bad, it is to have no effect*

*The clerk of a court has no authority by law to certify a fact under seal; his duty is to grant exemplifications*

*Parol evidence is not admitted to prove that a tract of land included in a certificate of survey, never was actually surveyed by the surveyor*

*Parol evidence admitted with the consent of the law, practice and usages, of the land office, before the revolution*

APPEAL from the General Court. The appellant brought an action of *ejectment* for a tract of land called *Part of Wood's Inclosure*, lying in *Frederick* county, containing 2286 acres. The defendant, (now appellee,) took defence on warrant under the general issue plea, and by his locations on the plots returned, defended himself under his title to a tract of land called *Usher's Freehold*, resurveyed for *Thomas Usher* on the 12th June 1785, and granted to the defendant on the 2d of September 1800. The cause was tried in the general court at May term 1803.

1. The plaintiff having located on the plots a deed from *John Howard* to *Philip Hammond*, offered to read in evidence that deed, bearing date the 27th of September 1753, being a deed of bargain and sale by way of mortgage, conveying unto *Hammond* "all those two parcels of land, being parts of a tract of land called *Wood's Inclosure*, and sold to the said *John Howard* by *Joseph Wood*, one parcel containing

The efficient qualities of the different kinds of warrants used to take up vacant lands, set out

A person who takes out a warrant of resurvey, without having a title to the original tract resurveyed, acquires an equitable interest in the vacant land ad led, when the composition money is paid; and his grant therefor will relate to the date of the certificate of resurvey, if it appears that his certificate was returned to the land office previous to the time when a prior grant for the same land issued on a junior certificate of survey, made and compounded on after the composition money was paid upon his certificate: and unless it was so returned, the prior grantee was a fair purchaser without notice of such equitable interest, and his grant cannot be overreached or defeated by relation

The court refused to direct the jury, that if they were satisfied from the evidence, that by the rules of the land office the certificate of resurvey, under which the plaintiff claims, was liable to be vacated upon a caveat, though the composition money was paid thereon, if J H, for whom the same was made, had no estate in the original tract, and that upon the certificate being so vacated, the vacant land included therein, and also included by E B in his certificate, if compounded on in time, might legally be granted to E B, and being so granted, that the plaintiff has no title under his grant to any part of the land so included in the grant to E B

A deed for 86 acres of land, (being part of a tract,) without courses or distances, but referring to another deed, (not produced,) to ascertain the same, is not legal evidence to show title, or to support the location thereof on the plots, without producing the deed to which it refers

Nor were certain facts and circumstances admissible to prove the location of the 86 acres, or to show title thereto, or that the deed referred to, or some bond or contract for conveying the 86 acres by metes and bounds, &c. as located on the plots, had ever been executed

Where the plaintiff has made but one location on the plots of the beginning of the land for which the ejectment is brought, and that is counterlocated, the jury cannot find a beginning for the plaintiff different from that located by him

The plaintiff must make such locations of the land upon the plots as will suit his case

The jury cannot find a location of their own, but must find some one of the plaintiff's, if they find for him

If the beginning of a tract of land is lost or cannot be proved, then the beginning is to be found by reversing the lines of the tract from the first known and established boundary

86 acres, the other 94 acres, *as by deed duly made, and recorded in the records of Frederick county, appears;* the said two parcels of land being also what the said *J. Howard's* dwelling plantation is made upon; also all that tract of land called *Chance,* lying in *Frederick* county," &c. To the reading of which deed the defendant's counsel objected, upon the ground that being a *mortgage,* the plaintiff must show how *Howard* became possessed of the land, or deduce his title; that although the deed is located on the plots, if it is a bad deed, it cannot be read in evidence to prove a location.

1807.
Hammond
vs
Norris

Chase, Ch. J.(a). The court are of opinion, that if a paper or deed is located upon the plots, and not counter-located by the opposite party, the party, who so locates it, may read it to the jury, to show how it is located; but when the validity of the deed comes in question before the court, if it is bad, the court will direct the jury that it is a defective deed, and is to have no effect with them, but to be wholly disregarded.

The court think the objection by the defendant's counsel is not a valid one, and that the deed may be read in evidence of the plaintiff's location of it on the plots. The defendant excepted.

2. The plaintiff then read to the jury the deed from *J. Howard* to *P. Hammond,* with the permission of the court, (though objected to by the defendant,) as evidence that the deed was located upon the plots. It was admitted by the parties, that *Wood's Lot* and *Wood's Inclosure* are one and the same tract of land, and that there are two names for the same land. The defendant, to prove that *J. Howard* never had any interest, or title in *Wood's Lot* or *Wood's Inclosure,* or in any part thereof, located upon the plots as beginning at *a,* offered to read in evidence the certificate of the clerk of *Frederick* county court, under his seal of office, certifying, "that among the records of the said county, from the commencement of the said county up to the year 1775, there is no deed, bond of conveyance, or other instrument of writing, from *Joseph Wood* to *John Howard,* for or respecting the land called *Wood's Lot,* or *Wood's Inclosure,* except a deed for ninety-four acres."

The clerk of a court has no authority by law to certify a fact under the seal of the court. His duty is to grant exemplifications

(a) *Done* and *Sprigg,* J. concurred.

**1807.**

*Hammond
vs
Norris*

The plaintiff's counsel objected to the certificate by the clerk of *Frederick* county court being read in evidence, because, they contended, it was not the duty of the clerk to certify that there were *no deeds* remaining on record in his office; that his duty was to give exemplifications of such as might appear on record. That the clerk ought to have been *subpœned*, if the party wished the benefit of the evidence offered, and examined him as a witness, whether he had searched for, and could not find such deeds.

CHASE, Ch. J. The court are of opinion, that the certificate given by the clerk of *Frederick* county court is illegal and incompetent evidence, and refuse to let it be read to the jury.

The clerk has no authority by law to certify a fact under the seal of the court of which he is clerk. His duty is to grant exemplifications. The defendant excepted.

Parol evidence not admitted to prove that a tract of land included in a certificate of survey never was actually surveyed by the surveyor

3. The defendant then offered evidence, [*a witness to prove the confession of J. Howard,*] that the land called *Part of Wood's Inclosure,* included in the certificate thereof, made for *J. Howard,* and dated the 5th of March 1753 under which the plaintiff claims title, never was actually surveyed under the warrant whereon that certificate is alleged to be founded; that the certificate was not made by *Isaac Brooke,* the deputy surveyor of *Frederick* county, or by any other person duly authorised to make the same, but that the same was made by *J. Howard* himself, by references altogether, without any actual survey.

CHASE, Ch. J. The court refuse to let the defendant give the evidence offered, or any part thereof, to the jury, (a). The defendant excepted.

Parol evidence admitted, with the consent of the parties; to prove the law, practice, and usages of the land office.

4. The plaintiff, to make title to the land in the declaration of ejectment mentioned, read in evidence the war-

A common warrant may be located on any uncultivated vacant land in the county, if no person has acquired a right of pre-emption to such vacant land.

A special warrant is used to affect cultivated vacant land, in which the location and quantity of acres are designated and the party pays the composition money at the time of obtaining the warrant.

A warrant of resurvey is taken out for the purpose of resurveying a tract, or parcel of land in which the party has a fee simple. The party thereby acquires a right of preemption in all the adjoining vacant land.

A person obtaining a warrant of resurvey, not having a title to the original tract resurveyed, acquires an equitable interest in the vacant land added, when the composition money is paid; and his grant therefor will relate to the date of the certificate of resurvey, if his certificate was returned to the land office when a prior grant for the same land was issued on a junior certificate of survey, not compounded on until after the composition money was paid on his certificate.

(a) See *Hammond et al. Lessee vs. Sheredine,* 4 *Harr. & M'Hen.* 420.

rant of resurvey which issued to *John Howard*, on the 6th of February 1753, "to resurvey part of a tract of land called *Wood's Inclosure*, originally laid out for 86 acres, to amend all errors, and to add the contiguous vacancy," &c. Also the certificate of survey, dated the 5th of March 1753, made in pursuance of the warrant of resurvey, stating, that "by virtue of a special warrant of resurvey granted to *John Howard*, to resurvey part of a certain tract of land called *Wood's Inclosure*, originally laid out for 86 acres, bearing date the 6th of February 1753, to resurvey the said land, to amend all errors, and to add the contiguous vacancy," &c. The surveyor, *Isaac Brooke*, certified, that he had resurveyed the land, and found no error; that he had added a piece of contiguous vacancy containing 2200 acres, "beginning at the original beginning, and running thence with the original N 68° W 54 ps. N 19° W 60 ps. then S 8° W 81 ps. S 53° E 48 ps. S 52° W 98 ps. N 25° W 38 ps. N 23° W 80 ps. N 5° W 106 ps. N 36° E 95 ps. to intersect the beginning of the N 7° E 130 ps. course of a tract of land called *Howard's Range*, and running with said courses N," &c. &c. "containing 2286 acres of land." Also the assignment of *Howard* to *Philip Hammond*, on the 29th of November 1753, annexed to the certificate of survey, whereby *Howard* assigned to *Hammond* "the certificate returned on a certain resurvey had and made upon 86 acres of land, being part of a tract of land called *Wood's Inclosure*, originally taken up by *Joseph Wood*, together with all his (the said *Howard's*,) right, &c. of and in the said certificate and the land, which by resurvey contains 2286 acres," &c. Also that the certificate was *examined* and *passed* on the 6th of March 1754; the composition money paid on the 7th of March 1754, and the quit rents paid up to the 7th of June 1771, amounting to £20 5 0. Also other indorsements on the certificate, showing that it was on the 30th of January 1772, *caveated* by *Philip*, *Rezin*, and *Matthias Hammond*; on the 10th of March 1772, caveated by *Edward Dorsey*, of *John*; on the 29th of October 1772, caveated by *Thomas Dorsey*; that the caveats were dismissed by the act of April session 1782; that there was an entry in the margin of the book, in which the warrant was entered, that a caveat had been entered by *Greenbury Ridgely*, and others, in 1754, and which had not been noticed when the other caveats were entered dismissed, and a list thereof forwarded by the re-

gister of the land office; that the last mentioned caveat of Greenbury Ridgely was withdrawn by Richard Ridgely, his son and heir at law, and that patent had issued on the 9th of September 1796 to Philip, Rezin, and Charles Hammond, and Richard Hopkins, and Hannah his wife. Also the last will and testament of Philip Hammond, (the elder,) dated the 6th of June 1753, wherein it does not appear that the land called Part of Wood's Inclosure is mentioned, but by his will "all the rest and residue of the real and personal estate" of the testator, is devised to his six sons, Charles, John, Philip, Denton, Rezin and Matthias, to be equally divided between them, and their heirs, as tenants in common. The plaintiff also offered in evidence, that P. Hammond, the testator, died some time in the year 1760, and that Charles Hammond was his eldest son and heir at law, to whom the title which P. Hammond, the father, had in the land, descended, and who became entitled to all the interest his father had therein (a). The plaintiff then deduced a regular title from C. Hammond, down to the lessors of the plaintiff. Also that the tract of land for which this suit is brought, as well as the several tracts or parcels of land described in the grants and deeds aforesaid, are truly located by the plaintiff on the plots. The defendant then offered evidence to prove, that there was no tract of land in the county of Frederick patented by the name of Wood's Inclosure, or so called in the certificate for the same; that a tract of land situate in Frederick county, was on the 10th of January 1748-9, resurveyed for Joseph Wood, by virtue of a warrant of resurvey dated the 28th of July 1748, and patented to him, the 1st of June 1750, for 1540 acres, and called in the certificate and patent thereof, Wood's Lot; that this land did afterwards acquire, in the neighbourhood where it lay, the name also of Wood's Inclosure; that a tract of land contiguous thereto, surveyed on the 12th of November 1752, called The Request, and located upon the plots, did actually begin at the end of the 19th line of Wood's Lot, but in the certificate thereof, calls to begin at the end of the 19th line of Wood's Inclosure; that several mesne conveyances,

(a) The counsel for the plaintiff, in this part of the statement, which they had drawn up, stated, that C. Hammond had become "seized prout lex postulat," to which the counsel for the defendant objected. The Court said these expressions were only proper where a legal title descends—In this case an equitable title only descended to C. Hammond.

1807.

Hammond
vs
Norris

for parts of *Wood's Lot*, executed by the proprietors thereof between the years 1754 and 1759, call and describe the land by the name of *Wood's Inclosure*. The defendant then read in evidence the patent to *Joseph Wood*, dated the 25th of March 1747, for the land called *Wood's Lot*, containing 126 acres, and granted to him for so much land due him by virtue of a warrant for that quantity granted him the 18th of February 1746, which tract is stated to lie in *Prince-George's* county, and beginning at a bounded oak standing on the E. side of a small branch, &c. agreeably to a certificate dated the 25th of March 1747. The defendant then offered evidence to prove, that *Wood's Lot* is truly located upon the plots, as beginning at A, and described by black lines from No. 1 to No. 43, black figures. Also that *J. Howard* never had any interest in, or title to, any part of *Wood's Lot*, or *Wood's Inclosure*, either in law or in equity, except as to 94 acres part thereof, which 94 acres are truly located on the plots; and to prove this, the defendant offered the evidence of the clerk of *Frederick* county court, the keeper of the land records of that county, to prove, that among the records of the county, from the commencement of the county up to the year 1775, there is no record of any deed, bond of conveyance, or other instrument of writing, from *Joseph Wood* to *J. Howard* for or respecting *Wood's Lot* or *Wood's Inclosure*, except the deed for the 94 acres above stated. Also the evidence of the clerk of the general court for the western shore, that among the records in his office there is no record of any deed, bond of conveyance, or instrument of writing of any kind, from *J. Wood* to *J. Howard*, respecting *Wood's Lot* or *Wood's Inclosure*, the plaintiff having on the trial produced no such deed, bond of conveyance, or instrument of writing, or any copy thereof. Also that *J. Howard*, or any person claiming from or under him, never was seized or possessed of any part or parcel of *Wood's Lot* or *Wood's Inclosure*, except the before mentioned 94 acres. Also that the 86 acres of land located by the plaintiff upon the plots, as the original upon which the resurvey called *Part of Wood's Inclosure* is pretended to have been made, was always, from the taking up thereof, to wit, from the 10th of January 1748, till the year 1780, in the possession, occupation, and actual user of *J. Wood*, the patentee, by actual inclosure of part, and by cutting and using

the wood land as to the residue, and during all that time never was, in the whole, or in part, in the possession of *J. Howard*, or of any person claiming under him. Also, that from the 1st of January 1780, down to this time, the said lands have been, and still are, in the like possession and occupation of the defendant in this cause, claiming under *J. Wood*, and not under any title derived through or from *J. Howard*. The defendant then read in evidence a deed from *Joseph Wood* to *Edward Dorsey*, for part of *Wood's Lot* or *Wood's Inclosure*, dated the 20th of June 1754, and reciting, that on the 21st of June 1750, *Wood* had conveyed to *Dorsey* part of *Wood's Inclosure*, containing 584 acres; that the parties had discovered that patent had issued to *Wood* for the land, by the name of *Wood's Lot*, although commonly called and known by the name of *Wood's Inclosure*. This deed was therefore to confirm the title, &c. Which land is truly described on the plots as beginning at red B, and described by yellow lines. That on the 22d of August 1757, *E. Dorsey* obtained a *special warrant* to resurvey the part of *Wood's Lot* so conveyed to him, which warrant stated that he was seized in fee of and in 584 acres of land, part of *Wood's Lot*, lying in *Frederick* county, originally, on the 1st of June 1750, granted by patent of confirmation to *Joseph Wood* for 1540 acres, contiguous to which he had discovered some vacant land, and being desirous to add the same, prayed a special warrant to resurvey his part of the said tract—warrant was therefore granted to him, &c. Also a certificate made for *E. Dorsey*, bearing date the 18th of February 1758, in virtue of the said warrant, by which certificate it appears that the said part so resurveyed for *Dorsey*, contained only 564 acres; that 336 acres of vacant land were added, and called *The Resurvey on Part of Wood's Lot*, containing 900 acres. Also a patent to *E. Dorsey* for the same land, bearing date the 18th of February 1758. Also that *E. Dorsey*, the patentee, died previous to the 16th of October 1760, and that the lands descended to his heir at law *Thomas Dorsey*. Also that the land so granted to *E. Dorsey* is truly located on the plots beginning at B, and described on the plots by blue lines from 1 to 38, red figures, marked at the end of each line with red P W L. Also that *E. Dorsey*, the patentee, and those claiming under him, held, used and enjoyed, *The Resurvey on Part of*

*Wood's Lot*, from the date of the certificate thereof, under the aforesaid title, down to the bringing of this ejectment, part of it in cultivation and under actual enclosure, and part being in woods uninclosed, by cutting, using wood on and therefrom; and that *J. Howard*, or any person under him, never did use, occupy, possess, or in any way enjoy, any part of the lands included in the resurvey called *The Resurvey on Part of Wood's Lot*, or any part of the lands included within the lines of the resurvey called *Part of Wood's Inclosure.* The parties in this cause, *by consent*, examined *John Callahan*, esquire, the register of the land office for the western shore, who deposed, that according to the law, practice, and usages of the land office, prior to the year 1753, and ever since, no person was entitled to a patent on a certificate returned on a warrant of resurvey, unless such person was seized of an estate of freehold in the original whereon the resurvey was made. That by the law, practice and usages aforesaid, from the time aforesaid, if the person so having returned a certificate, and had by the same included vacancy, and had paid to the officer, entitled to receive it, the full amount of caution money for the vacancy added, and the land was, after that payment, included in a subsequent certificate on which the caution money was fully paid, although subsequent to the payment of the first caution money, that in such case, if the prior certificate was caveated in the land office, and it was proved and made appear to the judges of the land office, that neither the person for whom the prior certificate was made, nor any one claiming the certificate, had any legal estate or seizin in the original on which the certificate of the resurvey was made, that then the prior certificate would be, and ought by the said law, practice and usages, to be vacated, and a patent ought to issue on the second or subsequent certificate, if that certificate was not in other respects liable to objection; and that upon so vacating the first certificate, the party claiming the same would be entitled to as much land warrant as would amount to the sum of money so paid for caution money. *Mr. Callahan*, upon cross examination, deposed that he has been in the land office, except fifteen or eighteen months, upwards of thirty-four years; that he came into that office in the year 1767. He knows of no proprietary instructions given, that a person taking out a warrant of

1807.

Hammond
vs
Norris.

resurvey on lands of which he was not seized in fee, and in virtue of that warrant including vacant land and compounding for the same, which prevented such person from having a patent for such vacant land. But that it was the understanding and practice of the office, in his time, that such patent would not be allowed. He knows of no usage or instance, in which a caveat has been heard and determined unless the caveator did show an interest in the lands at the time. He does not know any instance in which the caveat has prevailed unless the caveator had an interest in the land caveated. He knows of no instance in which a certificate made in pursuance of a warrant of resurvey, after composition money paid, by a person not seized of the original, has been caveated and vacated by a person not having an interest at the time when the money was paid, but has understood that any lands taken by a common warrant, special warrant or warrant of resurvey, would prevail against such certificate, but he cannot refer to any particular case. According to his understanding and recollection, the payment of the caution money was not made a question where the party obtaining the certificate had no original; but that where a certificate of junior date, regularly made and compounded on, including the same land, though made after the payment of the caution money upon the elder, prevailed. He has no recollection of any particular case, but he always understood the payment of composition money under such circumstances was an unimportant circumstance. He does not recollect any case where a person has entered a caveat alleging himself seized of the original, on which the warrant of resurvey issued to another person. *Interrogatories* were put to Mr. *Callahan* by the plaintiff and defendant, to which he answered in the manner set forth in *Kilty's Land Holders Assistant*, 456, 457 and 458.

The plaintiff then offered in evidence that the said *Callahan*, entered into the land office, as a clerk, in the year 1767, that at that time *William Steuart* was the chief clerk, and so continued till the year 1774, when *David Steuart* succeeded him and continued to hold that office until 1777; that *Saint George Peale* was appointed register of that office the 21st of April 1777, and so continued till the year 1779, when the said *Callahan* was appointed; and that during the time *William Steuart* was the chief clerk,

1807.

Hammond
vs
Norris.

*Saint George Peale* was principal acting clerk under him, and also under *David Steuart*, both of whom had several other clerks in that office. And the parties, by consent, also examined the Honourable *Alexander Contee Hanson*, chancellor of the state, and judge of the land office, who deposed and answered the several questions propounded by the counsel of the parties as they are set forth in *Kilty's Land Holder's Assistant*, 445 to 456, 460 to 465. Which evidence was delivered by the *register* of the land office for the *western* shore, and by the *Judge* of that office, in open court, and reduced to writing by them respectively; and the testimony by them so respectively given was, by consent of the parties, agreed to be received, to operate so far as the same is legal and proper. The plaintiff also read in evidence certain proprietary regulations or instructions. [*Which see in Kilty's Land Holder's Assistant.*] The defendant then offered to prove, that the certificate for *Part of Wood's Inclosure* had never been returned into the land office, until after *E. Dorsey* had obtained his patent for *The Resurvey on Part of Wood's Lot*, to wit, till after the 18th of February 1758; that *E. Dorsey*, and those claiming under him, have regularly paid the *quit rents* upon the whole of *The Resurvey on Part of Wood's Lot*, from the 18th of February 1758, to the commencement of the revolutionary war between the *United States* and *Great Britain*, and have ever since paid the public taxes and county levies and dues thereon. The plaintiff then prayed the opinion of the court, and their direction to the jury, that the patent which issued on the 9th of September 1796, to *Philip*, *Rezin*, and *Charles Hammond*, and *Richard Hopkins*, and *Hannah* his wife, will, by *relation* to the date of the certificate of survey, be effectual to pass a title to all the *vacant land* included therein, notwithstanding *John Howard* had no right or estate of, in and to, the *eighty-six* acres of land on which the warrant issued, and notwithstanding the same may have been included in *Edward Dorsey's* resurvey aforesaid.

*Martin*, (Attorney General,) *Key* and *Johnson*, for the plaintiff, cited 18 *Vin. Ab.* tit. *Relation*, 289, 290. *Garretson's Lessee vs. Cole*, 2 *Harr. & M'Hen.* 459. *Howard's Lessee vs. Cromwell*, 1 *Harr. & Johns.* 115. *Gibson's Lessee vs. Smith*, *Ibid.* 253. *Lloyd vs. Gordon*, 2 *Harr. & M'Hen.* 254.

*Shaaff, Mason* and *Harper,* for the defendant, cited *Co. Litt.* 150. a. *Ringgold's Lessee vs Malott,* 1 *Harr. & Johns.* 299. 3 *Coke,* 28, 29, 30. *Anon.* 3 *Atk.* 314. *Townsend vs Ash, Ibid* 340. 2 *Shep. Ab.* (3d part,) 149, 150, 151, 152. *Bladen's Lessee vs Cockey,* 1 *Harr. & M'Hen.* 234. 3 *Lev.* 285. 2 *Vent.* 89, 200. *Cro. Jac.* 512. 10 *Coke,* 49. *Hath's Lessee vs Polk,* 1 *Harr. & M'Hen.* 363. 3 *Blk. Com.* 43. 2 *Roll. Rep.* 502. *Jenk.* 428. 18 *Vin. Ab.* tit. *Relation,* 290, pl. 8. *Selwin vs Selwin,* 2 *Burr.* 1134. S. C. 1 *W. Blk. Rep.* 222, 223. *Roe vs Griffits,* 4 *Burr.* 1962. *Doe vs Roe, Ibid* 1971. 2 *Roll. Ab.* 399. *Garretson vs Cole,* 1 *Harr. & Johns.* 370. *Beall's Lessee vs Beall, Ibid* 347. *Peter's Lessee vs Mains,* 4 *Harr. & M'Hen.* 423. *Cheney vs Ringgold's Lessee, (ante* 87.) *West's Lessee vs Hughes,* 1 *Harr. & Johns.* 13. *Lloyd vs Tilghman,* 1 *Harr. & M'Hen.* 85.

CHASE, Ch. J. In deciding the question before the court, it will be necessary to consider the efficient qualities of the different kinds of warrants which are used to take up vacant land, cultivated or uncultivated.

A *common warrant* may be located on any uncultivated land in the county, to the surveyor of which the warrant is directed, if no person has acquired a right of pre-emption to such vacant land.

A *special warrant* is used to affect cultivated land, in which the location and the quantity of acres are designated, and the party pays the composition money at or before the time of granting the warrant, for the number of acres so directed. The survey is then made within the usual time of *six months,* for ascertaining with more exactitude and precision the land thus affected. If on the survey being made it appears to the party that he has not as much land as he paid for, he can apply the surplus of his warrant to affect any vacant land, which a common warrant is competent to take, whether it lies in contiguity or detached from the land so located in his warrant.

A *warrant of resurvey* is taken out for the purpose of resurveying a tract or parcel of land in which the party has a fee simple. In virtue of such warrant, the party acquires a right of pre-emption in all the adjoining vacancy, and if he makes his survey, and pays the caution money within *two* years from the date of his warrant, he has a complete equitable interest in all the vacancy included in his survey.

The question for decision now occurs, can a person, who takes out a warrant of resurvey without having a title to the land to be resurveyed, acquire a title in the vacant land taken up and included in such resurvey?

The court are of opinion, that such warrant will operate as a common warrant, and affect any vacant land which a common warrant was competent to affect; and that, if the jury find the facts as stated, that an equitable interest vested in *John Howard* on the 7th of March 1754, when the composition money was paid, in all the vacancy included in his resurvey, and that the patent obtained in 1796, and granted to *Charles, Philip,* and *Rezin Hammond,* and *Hannah Hopkins,* wife of *Richard Hopkins,* will operate by relation to the date of the certificate of resurvey, if it appears to the jury that the certificate was returned to the land office previous to the time when *Edward Dorsey* obtained his grant, which is stated to be on the 18th of February 1758. That, in the opinion of the court, unless that fact is found by the jury, *Edward Dorsey* was a fair purchaser without notice of the equitable interest of *John Howard,* and the grant of *Edward Dorsey* cannot be over-reached or defeated by relation. The defendant excepted.

5. The defendant then prayed the court for their opinion and direction to the jury, that if they were satisfied from the evidence, that by the rules and regulations of the land office in the year 1758, and since, the certificate of resurvey, under which the plaintiff now claims, was liable and subject to be vacated upon a caveat, notwithstanding the payment of the composition money thereon, if *J. Howard,* for whom the same was made, had no estate or seisin in the original tract, so resurveyed, and that upon the certificate being so vacated, *the vacant land* so included therein, and also included by *E. Dorsey* in his certificate of resurvey called *The Resurvey on Part of Wood's Lot,* as above stated, if the last certificate was compounded on in time, and in all other respects conformed to the rules and regulations of the land office, might legally, properly and regularly, be granted to *E. Dorsey,* and being so granted, that the plaintiff had no title under the grant for *Part of Wood's Inclosure* to any part of the land so included within the patent to *E. Dorsey* for *The Resurvey on Part of Wood's Lot.*

The court refused to direct the jury, that if they were satisfied from the evidence that, by the rules of the land-office, the certificate of resurvey, under which the claims, was liable to be vacated upon a caveat, tho' the composition money was paid thereon, if J. H. for whom the same was made, had no estate or seisin in the original tract, and that upon the certificate being so vacated, the vacant land included therein, and also included by E. D. in his junior certificate, if compounded on in time, might legally be granted to E. D. and being so granted, that the plaintiff had no title under his grant to any part of the land so included in the grant to E. D.

1807.

Hammond,
vs
Norris

A deed for 86
acres, being part
of a tract of land,
without courses or
distances, but re-
ferring to another
deed, which can-
not be found, to
identify the same,
is not legal evi-
dence to show title
or to support the
location thereof on
the plots. Nor
were certain facts
and circumstances
admissible to
prove the location
of the 86 acres, or
to show title there-
to.

Chase, Ch. J. The court cannot give the opinion and direction prayed for. The defendant excepted.

6. The plaintiff then gave in evidence the patent of Wood's Lot, granted to Joseph Wood on the 25th of March 1747, for 126 acres of land. Also a resurvey made thereon by Wood, and the patent granted to him on the 1st of June 1750, for 1540 acres of land, and called Wood's Lot; and that the same lands are truly located on the plots. Also, that the resurvey called Wood's Lot, was known in the neighbourhood by the name of Wood's Inclosure, and that Wood's Lot, the resurvey, and Wood's Inclosure, were one and the same tract of land. Also a certificate of resurvey made by J. Howard of Part of Wood's Inclosure, surveyed on the 5th of March 1753. He then deduced the title to the said land down to the lessors of the plaintiff. He then offered in evidence the deed dated the 21st of June 1750, from J. Wood to J. Howard, for 94 acres of land, being part of Wood's Lot, and called Wood's Inclosure; and that the same is truly located by him on the plots. Also a deed from J. Wood to E. Dorsey for a part of Wood's Lot, dated the 20th of June 1754; and that the same is truly located by him on the plots. He then produced, and offered to read in evidence, the deed from J. Howard to P. Hammond, dated the 27th of September 1753, herein before mentioned in the first bill of exceptions; and showed, that the 86 acres of land therein mentioned, were located by him on the plots, beginning at the end of the 27th line of Wood's Lot, as located by him at black a, and running, &c. to the beginning; and to prove that to be the true location thereof, he offered to give in evidence the deed, and the resurvey made by E. Dorsey on the 18th of February 1758, on the land so conveyed by J. Wood to Dorsey, and called The Resurvey on Part of Wood's Lot; and that the resurvey is truly located by him on the plots; and that the 35th line of that resurvey strikes the end of the third line of the 86 acres, and then runs three lines thereof reversed to the beginning of the 86 acres, and thence to its beginning at black B, excluding the 86 acres. He further offered to prove, that after the death of E. Dorsey, the land contain-ed in the last mentioned resurvey and patent descended to T. Dorsey his heir. Also that the devisees of P. Ham-

1807.

Hammond
vs
Norris

*mond*, the assignee, claimed the land contained in the certificate, so assigned, as personal property, and that *C. Hammond*, his heir, claimed the same as land not devised by the will. Also, that a caveat was entered by the devisees against the issuing of a patent to *C. Hammond* on the certificate, and which caveat was endorsed and noted on the certificate on the 30th of January 1772. He also offered in evidence, a deed dated the 17th of November 1779, from *Philip* and *Rezin*, two of the devisees, to *Matthias Hammond*, one other of the devisees, for their interest in the two tracts mentioned in the deed from *J. Howard* to *P. Hammond*, their father, and in which the 86 acres are described by the following metes and bounds, to wit: "Beginning at the end of the 27th course of the land called *Wood's Inclosure*, and running" &c. and that the same are the beginning, courses, metes and bounds, by which the plaintiff hath located the 86 acres on the plots. Also a deed dated the 17th of November 1779 from *M. Hammond* to *B. Warfield*, conveying all his right and interest to the two parcels of land mentioned in the deed from *J. Howard* to *P. Hammond* to be conveyed, and in that deed the 86 acres of land are described as contained within the same metes and bounds and beginning at the same place. And that *Warfield* did, in consequence of that deed, enter upon and possess the parcels of land therein mentioned, and that afterwards, in the year 1790, he sold his interest and right in the two parcels of land to *T. Dorsey*, and gave up the two parcels of land to *T. Dorsey*. Also an original deed, dated the 14th of March 1772, from *C. Hammond*, heir at law of *P. Hammond*, to his brother *J. Hammond*, one of the devisees, for his interest and estate in the two parcels of land. And that *J. Hammond*, in his life-time, sold all his interest in the two parcels of land to *T. Dorsey*; that both *C.* & *J. Hammond* departed this life antecedent to the 22d of June 1784, and that *W. Hammond* was the son and heir of *J. Hammond*; and that on the 22d of June 1784, *W. Hammond*, in consideration of the payment to him by *T. Dorsey* of the sum of £23 7 6, the balance of the purchase money then due from *T. Dorsey*, under the sale by his father, did execute a deed to *T. Dorsey*, conveying to him all his right and interest in the two parcels of land. And that *T. Dorsey*, so being entitled, as heir

at law, to the lands contained in the resurvey made by *E. Dorsey*, and having so purchased the two parcels of land mentioned in the deed from *J. Howard* to the first mentioned *P. Hammond*, afterwards, on the 27th of September 1784, entered into a contract in writing, under seal, with *Thomas Usher*, for the sale of certain lands, and among others, the 86 acres, and that the 86 acres in that contract are described as being purchased by *P. Hammond*, in his life-time, on the 9th of November 1751, of a certain *J. Howard*, and as having been bought by *T. Dorsey* of the devisees of *P. Hammond*, and as having been sold by *J. Howard* to *P. Hammond*, and purchased by *T. Dorsey*; and having proved the execution of the contract, offered to read the same in evidence. He also offered to give in evidence a deed from *T. Dorsey* to *T. Usher*, dated the 12th of February 1785, for the several tracts of lands in the contract mentioned; and that the courses, lines and metes, mentioned in the deed, are truly located on the plots by the plaintiff, and do include the whole of the 86 acres as located by the plaintiff, and that one line thereof strikes the second line of the 86 acres, as located by the plaintiff, and runs thence to the end thereof, then with the 3d, 4th, 5th, and 6th lines of the plaintiffs' location of the 86 acres, and then with the given line, to its beginning at black *a*, and thence to black *B*, the beginning of the deed; and that in the deed there was a covenant of warranty as to the parts of the resurvey on *Wood's Lot* contained in the said deed, against *T. Dorsey*, his heirs and assigns, and against *J. Howard*, and his heirs and assigns only. Also a deed from *T. Dorsey* to *T. Usher*, dated the 27th of May 1785, for the same lands, describing them in the same manner, but containing a general warranty. And that *T. Usher* did, by virtue of the deeds to him, enter into and take possession of the lands so conveyed by *T. Dorsey*, and among other parts thereof, of the 86 acres, so sold to him by *T. Dorsey*, and so located, and made a resurvey thereon, and returned a certificate of resurvey, dated the 12th of June 1785, called *Usher's Freehold*, and that the same is truly located on the plots by the plaintiff; and that the lines thereof include the whole of the 86 acres, striking the same at the same place, and running with it in the same manner as the deed from *T. Dorsey* to *T. Usher*, and that *T. Usher* was possessed of the land

so contained in his certificate, until his death, which happened about January 1786. That *T. Usher*, by his will appointed *T U*, *S J*, *J U*, & *J D*, executors thereof, and did devise, direct, and empower them, or the survivors or survivor of them, to make sale of all and every part of his real estate, and to execute deeds for the same, to the purchasers thereof, in fee simple; and that the executors did take upon themselves the execution of the will, and obtained, in due form of law, letters testamentary. That after the death of *T. Usher*, one *John Salmon* filed a bill in the court of chancery against the devisees and executors of *T. Usher*, to compel a sale of his real estate for the payment of his debts; that it was so proceeded in that suit, that a decree was made for the sale thereof; and that by virtue of that decree, the said lands were sold to divers persons, as stated in a report thereof returned to the court of chancery, and by the chancellor approved, ratified and confirmed. That the part of the land located by the defendant as his defence, was purchased by *Catharine Usher*, widow of *T. Usher*, and by her sold to the defendant, who entered into and possessed the same under that sale. That it was agreed that the patent upon the certificate so returned by *T. Usher* should, for convenience, be granted to the defendant, and that he should then convey to the several purchasers under the decree, the respective parts respectively by them purchased; that the patent was so issued, and conveyances so made, and that the respective purchasers of the land, so contained in the certificate returned by *T. Usher*, did enter upon and possess the parts thereof by them respectively purchased, by virtue of the title of *T. Usher*, and the sales under the decree. And that after the death of *T. Usher*, his executors claimed the whole land contained in the certificate, so by him returned, under his title. Also a deed from *Joseph Wood*, the patentee, to *Jonathan Wood*, his son, but not his heir at law, dated the 4th of March 1780, for "all that tract or parcel of land, being part of a tract called *The Resurvey on Wood's Lot*, beginning at the end of the 27th line of the said resurvey on *Wood's Lot*, and running," &c. "containing 153 acres of land," &c. And that the 153 acres included the 86 acres of land mentioned in the deed from *J. Howard* to *P. Hammond*, and are the same 86 acres of land located by the plaintiff as the 86 acres sold to *T.*

1807.

Hammond
vs
Norris

*Usher* by *T. Dorsey.* Also a deed, dated 9th May 1786, by *Jonathan Wood,* executed in due form of law, to the executors of *T. Usher,* to confirm their title to the 86 acres, in which it is expressed, "that doubts had arisen in regard to the title of 86 acres, part of a tract of land sold by *T. Dorsey* to the said *T. Usher,*" and that in consequence *Jonathan Wood* conveyed to the executors of *T. Usher,* all his right and title to the 86 acres, to begin at the end of the 27th course of *Wood's Inclosure,* and runing thence, &c. That the courses and beginning, so described by the heir of *Joseph Wood,* under whom *J. Howard* claimed the 86 acres, are exactly correspondent with the location of the 86 acres made on the plots by the plaintiff. That before and at the time when the said deed was executed, the executors were possessed of the 86 acres, according to the location under the title of *T. Usher,* and that the 86 acres were the same 86 acres mentioned in the deed from *J. Howard* to *P. Hammond,* and which had thus been conveyed to *P. Hammond,* and which had thus been conveyed to *Warfield,* and to *T. Dorsey,* and on which *J. Howard* made his resurvey; and that no person whatever has had any possession of the 86 acres, located as the plaintiff hath located the same, except *J. Howard,* and those claiming from and under him. Evidence was then offered, that no deed could be found on record from *Joseph Wood* to *J. Howard* for the 86 acres.

*Mason, Shaaff,* and *Harper,* for the defendant, objected to the reading of the deed from *J. Howard* to *P. Hammond,* dated the 27th of September 1753, to prove the location of the 86 acres. They cited *Co. Litt.* 352. b. 3 *Com. Dig.* (E. 4.) 274.

*Martin,* (Attorney General,) *Key* and *Johnson,* contra, cited *Gitting's Lessee vs Hall,* 1 *Harr. & Johns.* 14. *The Earl of Sussex vs Temple et al.* 1 *Ld. Raym.* 311; and *Gilb. L. E.* 100.

CHASE, Ch. J. The deed from *J. Howard* to *P. Hammond* of the 27th of September 1753, does not sufficiently specify the land, being for 86 acres, and 94 acres, parts of *Wood's Inclosure,* "conveyed by *Joseph Wood* to *John Howard,* as appears by deed recorded in *Frederick* county," but the deed thus referred to cannot be found. This

deed does not define the 86 acres by any courses or dis-tances, there is, therefore, nothing in it whereby any lo-catable land can be conveyed, and of course passes no-thing, and passing nothing it cannot be evidence. Nothing but the deed itself can prove the location of the land re-cited in the deed now offered to be read to the jury. The court are therefore of opinion, that the deed from *J. How-ard* to *P. Hammond* is not legal evidence to show title in *Hammond* in the 86 acres of land, part of *Wood's Inclo-sure*, as located on the plots by the plaintiff, or to support his location of the same, without producing the deed from *Joseph Wood* to *J. Howard*, to which the deed from *J. Howard* to *Hammond* doth refer, to ascertain and identify the 86 acres intended to pass by the same; and that the deed is inoperative to pass the same, without producing that deed. The court refuse therefore to suffer the same to be read to the jury.

The court are also of opinion, that the facts and circum-stances, stated by the plaintiff, are inadmissible to prove the location of the 86 acres, and the court refuse to suffer the same to be read to the jury for that purpose, or to show title in *P. Hammond* in the 86 acres of land. The plain-tiff excepted.

7. The plaintiff then, in order further to prove that *J. Wood* did execute to *J. Howard* some conveyance for the 86 acres of land, or some bond or contract for the con-veying to *Howard* the 86 acres, by the same metes and bounds, and beginning as located by the plaintiff, offered to give in evidence the deed from *Howard* to *P. Hammond*, and the resurvey made by *E. Dorsey* on the 18th of February 1758, on the land so conveyed by *Wood* to *Dor-sey*, and that the resurvey is truly located, &c.

*Nor that the deed referred to, or some bond or contract for con-veying the 86 acres by the metes and bounds, &c. as lo-cated on the plots, had ever been exe-cuted*

Chase, Ch. J. delivered the same opinion as that given on the prayer in the preceding bill of exceptions, and then proceeded as follows: The court are also of opinion, that the facts and circumstances, stated by the plaintiff, are inadmissible to prove, that *Joseph Wood* did execute to *John Howard* a conveyance for the 86 acres of land, or a bond, or contract, for the conveying to *Howard* the 86 acres by the same metes and bounds, and beginning as lo-cated by the plaintiff; and do accordingly refuse to allow

1807.

Hammond
vs
Norris

*Where the plaintiff has made but one location on the plots of the beginning of the land for which the ejectment is bro't, and that is counterlocated, the jury cannot find a beginning for the plaintiff different from that located by him.*

*The plaintiff must make such locations on the plots as will suit his case.*

*The jury cannot find a location of their own, but must find some one of the plaintiff's, if they find for him.*

the same to be given in evidence to the jury. The plaintiff excepted.

8. The plaintiff then prayed the opinion and direction of the court to the jury, that unless they are satisfied, from the evidence, of the true position of the beginning of the 86 acres of land, on which the resurvey called *Part of Wood's Inclosure* was made, or the beginning of that resurvey, and for which land this suit is brought, that then they *have a right, and are bound* by law, to ascertain a place of beginning, by reversing the first nine courses of that resurvey without variation, or with such variation as they think right, from the place marked *a* on the plots, at red figures 27, and red *P W L*, and that unless they are satisfied, from the evidence, of the place where the 104th line of the resurvey calls for, that then the true location of the land is to be ascertained by running the lines of the resurvey from the place marked on the plots at *q*, without or with such variation as they think proper, until the given line shall intersect and close with the beginning so found by reversing as aforesaid. And that the jury are by law competent to draw lines on the plots, to ascertain the true position of the land in the declaration mentioned, or to make such description thereof in their verdict, as shall fix the true position of the same, notwithstanding there are no such lines on the plots at this time located. And in case they have evidence, to satisfy their minds, of the true original beginning of the resurvey made by *Wood*, and for which this suit is brought, and that the same is at a place different from what is located by either the plaintiff or the defendant, that then they are to begin at the place so proved, and run the first eight courses of the grant, without or with such variation, as they think most proper, to correspond with the original location; and that the ninth course must be run to its call at *a*, red 27, red *P W L*; and in case they have not evidence to establish the place called for at the termination of the 104th line, that then they have a right, and are bound, to locate the lines from *q*, with or without variation, as they think proper, until the given line shall intersect and close with the place of beginning. And that the jury are by law competent to draw lines on the plots to ascertain the true position of the land, or to make such description thereof in their verdict

as shall fix the true position of the land, notwithstanding there are no such lines on the plots at this time located. And on fixing such location the plaintiff is entitled to their verdict for all such land as is included within their finding, and which is also contained in the locations of the plaintiff of *Part of Wood's Inclosure*, and for which the defendant hath taken defence.

1807.

Hammond
vs
Norris

*Martin*, (Attorney General,) and *Key*, for the plaintiff, cited the act of *November* 1781, *ch.* 20, *s* 14, and *Carroll, et al. Lessee vs E. & S. Norwood*, 1 *Harr. & Johns.* 167.

*Shaaff*, for the defendant, cited *Kirkpatrick's Lessee vs Kyger*, 1 *Harr. & Johns.* 298, and *Webb's Lessee vs Beard, Ibid* 349.

CHASE, Ch. J. The court cannot give the direction prayed on the part of the plaintiff, inasmuch as the plaintiff has not made any location on the plots to warrant the court in directing the jury to find a beginning for the plaintiff, different from that located at the letter *G*, as the beginning of *Part of Wood's Inclosure*, the plaintiff having made only one *location* of the *beginning* of that tract of land, and the same having been counterlocated by the defendant.

The chief judge said, that the plaintiff must make such locations as will suit his case. He has made two from the same beginning, one of which the jury must find, if they find for the plaintiff. It is customary, in order to meet the variation of the compass, to make sundry locations, so as to have one which the jury may find. The plaintiff relies upon his locations; and the jury cannot find a location of their own, but must find some one of the locations made by the plaintiff, if they find for the plaintiff. The plaintiff excepted.

On motion of the plaintiff's counsel, leave was given by the court to withdraw a juror, for the purpose of amending the plots; but the plots were amended by consent of the parties without withdrawing a juror, and the trial continued.

9. The plaintiff then prayed the opinion of the court, and their direction to the jury, that if the beginning of *J. Howard's* resurvey is lost, or cannot be proved, then the beginning of the same is to be found by reversing the lines from the first known and established boundary; and

If the beginning of a tract of land is lost, or cannot be proved, then it is to be found by reversing the lines from the first known and established boundary.

that the holders under that resurvey are entitled to all the land within that resurvey located from such beginning so found, unless taken away by elder surveys.

THE COURT gave the direction to the jury as prayed.

Verdict and judgment for the defendant, and the plaintiff appealed to this court.

The cause was argued at the last term before TILGHMAN, NICHOLSON, and GANTT, J. upon the bills of exceptions taken by the plaintiff in the court below, being the 6th, 7th and 8th, as herein before stated and numbered.

*Key*, and *Johnson* (Attorney General,) for the Appellant, in their arguments stated, that under the *sixth* and *seventh* bills of exceptions two questions occurred—1. Whether *Howard* had title to the 86 acres of land upon which his resurvey was made? And 2. Whether sufficient evidence was offered to the jury to establish the location of the 86 acres on the plots? They contended that there was sufficient evidence for the court to direct the jury to presume a deed from *Wood* to *Howard*. At all events that the evidence ought to have been suffered to go to the jury for them to judge whether or not such a deed had ever been executed. They cited *Gilb. L. E.* 98. *Gitting's Lessee vs. Hall*, 1 *Harr. & Johns.* 14.

On the *eighth* bill of exceptions they contended, that the jury had a right to draw lines on the plots, or in any other manner they might think proper, in order to find the beginning of the land in controversy, although the beginning so found might be at a different place from that located on the plots by either of the parties. They cited *Darnall's Lessee vs. Goodwin*, 1 *Harr. & Johns.* 282. *Carroll et al. Lessee vs. Norwood*, *Ibid* 186.

*Shaaff* and *Harper*, for the Appellee, in their arguments on the *sixth* and *seventh* bills of exceptions, cited *Vaugh.* 74. *Gilb. L. E.* 99. *Morris's Lessee vs. Vanderen*, 1 *Dall. Rep.* 67. *Com. Dig.* tit. *Evidence*, (B 5.) *Smith vs. The Vestry*, &c. in this court on the E. S.

On the *eighth* bill of exceptions they insisted that the plaintiff could not give evidence that the beginning of the land, for which he brought his ejectment, was at a different place than that claimed by his locations on the plots.

*1807.*

Hammond
vs
Norris

They cited *Kirkpatrick's Lessee vs. Kyger*, 1 *Harr. &*
*Johns.* 289. *Webb's Lessee vs. Beard*, Ibid 349.
*Hughes's Lessee vs. Howard*, decided in *Baltimore* county
court, and now on appeal in this court.

1807.

Hammond
vs
Warfield

*Curia adv. vult.*

THE COURT, at this term, decided that there was no
error in the opinions given by the general court in either
of the bills of exceptions taken on the part of the plaintiff
below.

NICHOLSON, J. concurred, except as to the opinion
given in the *eighth* bill of exceptions, and from that
opinion he dissented,

JUDGMENT AFFIRMED.